DENNIS R. BAGNERIS, SR., Judge.
11This is an appeal involving an award of damages to plaintiffs, Huey and Odessa Galmiche, for injuries resulting from a dog bite. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On September 1, 1998, Plaintiffs Huey and Odessa Galmiche were under a mandatory evacuation order from the Plaque-mine Parish Government. Mr. and Mrs. Galmiche scheduled to meet defendant Mitchell Buras, Mrs. Galmiche’s brother, at his home so that they could leave together. As Mr. and Mrs. Galmiche arrived at defendant Buras’s residence, Defendants Arthur Muncie and Billy Joyce Muncie and their son were also there with their dog, a Rottweiler named Hondo.
Mr. and Mrs. Muncie both testified that their dog was acting nervous while at Mr. Buras’s home. As Mrs. Galmiche turned to walk away from the dog, the dog attacked her by biting her arm and back. Mrs. Galmiche was taken immediately to the Plaquemines Parish Comprehensive Care Center for emergency care.
1 ¡¡Mr. Verges, a registered nurse and employee of Plaquemines Parish Comprehensive Care Center took Mrs. Galmiche’s complaint and medical history. Although it was the policy of the Plaquemines Parish Comprehensive Care Center to call the police in the case of a dog bite, Mr. Verges testified that they did not report Mrs. Galmiche’s dog bite to the police.[1]
Mrs. Galmiche testified that she was told by the Plaquemines Parish Comprehensive Care Center staff to keep an eye on the dog for a ten-day period. She further testified that although she was concerned about contacting rabies, she understood that the dog would be monitored for ten days and if the dog showed signs of rabies the appropriate authorities would contact her.
On September 4, 1998, Mrs. Galmiche received a call at approximately 9:00 p.m. from Mr. Simmons, an employee of the Plaquemines Parish Comprehensive Care Center, indicating that the dog had died and that she should call the police department. Mrs. Galmiche called the Sheriffs Department at approximately 9:50 p.m. so that the Department could take appropriate action. Officer Cognevieh, the supervisor during that evening, sent Officers Troy Smith and Mark Plummer to handle the complaint. Officers Plummer and Smith testified that they arrived at Mr. and Mrs. Galmiche’s house at 10:02 p.m.
Officer Cognevieh called Animal Control at 10:14 p.m. Mr. E.J. Savastano, the Superintendent of Health for Plaquemines Parish Government’s Animal Control Department, returned the call at approximately 10:48 p.m. Officer Cognevieh requested that the dog be picked up that night; however, Mr. Savastano 13told both the Sheriffs deputy and Mr. Galmiche to put the dog on ice, and that the animal control officer would retrieve the dog the next day. Specifically, Mr. Savastano testified as follows:
I have one small animal warden and he lives in Point-a-la-Hache and by the time I contact him, it would be too late to catch the Point-a-la-Hache ferry.I told Officer Cognevieh that under the circumstances, we couldn’t pick the dog up that night. That we would pick it up the first thing in the morning, (sic) The *759 first ferry at Point-a-la-Hache in the morning to the westbank. I told. him. to ice it down.
Thereafter, Mr. Galmiche did put the dog on ice, and the animal- control officer picked up the dog the following day. The animal control officer took the dog to the laboratory for testing on Tuesday, September 8,. 1998; however, the, lab reported that the brain tissue had been contaminated and it could not be tested. Consequently, Mrs. Galmiche had to undergo rabies treatment.
On January 22, 1999, Mr. and Mrs. Gal-miche filed suit against Mitchell Buras and his insurer, Audubon Insurance Company, and Arthur Muncie, alleging that defendants’ negligent behavior caused plaintiffs injuries. Thereafter, Mr. and Mrs. Gal-miche supplemented and amended their petition for damages to include as defendants the Plaquemines Parish Comprehensive Care Center, and the Plaquemines Parish Government’s Animal Control Department, alleging that: (1) the employees of Plaquemines Parish Comprehensive Care Center negligently advised Mrs. Gal-miche that the offending dog did not have to be examined; and (2) through the gross negligence of Salvadore Salvastano, an employee of Plaquemines Parish, the dog was not examined immediately, as required by law, even though Mr. Salvastano had notice that the animal, bit Mrs.Galmiche.
Prior to trial, Mr. and Mrs. Galmiche settled their claims against two defendants, Plaquemines Parish Comprehensive Care Center and Mitchell Buras, |4leaving only Arthur Muncie and Plaquemine Parish Government as defendants. Following a bifurcated bench trial, the court rendered a judgment against the defendant Plaquemines Parish Government, finding Plaquemines Parish, Government liable for 20% of the fault in the cause of the injuries to Mr. and Mrs. Galmiche. In its reasons for judgment, the trial court allocated fault as follows[2]:
Plaquemines Parish Government 20%
Arthur Muncie 10%
Mr. and Mrs. Galmiche 20%
Plaquemines Parish Comprehensive Care Center 40%
Following a trial on damages, the trial court awarded general damages to Mrs. Galmiche in the amount of $500,000.00, finding Plaquemine Parish Government liable for $100,000.00 (representing 20% of the total damages to which she was entitled), and awarded Mr. Galmiche a loss of consortium award in the amount of $50,000.00, finding Plaquemine Parish Government liable for $10,000.00 (representing 20% of the total damages to which he was entitled). Plaquemine Parish Government filed Motions for New Trial on the issues of liability and damages, which were both denied on September 20, 2004.
The Plaquemine Parish Government appeals this judgment of the trial court, making the following assignments of error:
'•1. The trial court committed manifest error and an abuse of discretion in finding a causal link between any action' or inaction of Plaquemines Parish Government, its officers, agents or employees, and the ruination of the specimen for the purposes of testing for rabies.
2. The trial court committed manifest error and an abuse of discretion in attributing only 20% of the fault to Mr. and Mrs. Galmiche.
|ñ3. The trial court committed manifest error and an abuse of discretion in attributing only 40% fault to the *760 Plaquemines Parish Comprehensive Care Center, and 10% of the fault each to Arthur Muncie, the owner of the dog, and Mitchell Buras, the owner of the premises and the party who with Mr. Muncie failed to notify Mrs. Galmiche about the dog’s demise.
4. The trial court committed manifest error and abuse of discretion in finding that the total damages incurred by Mrs. Galmiche, prior to the adjustment for comparative fault of the various parties, was $500,000.00, and for the plaintiff, Mr. Galmiche, prior to adjustment for the comparative fault of the various parties, was $50,000.00.
Mr. and Mrs. Galmiche filed an answer to the appeal, alleging the following two assignments of error:
1. The trial court improperly ruled that Mrs. Galmiche was 20% at fault.
2. The trial court erred in assigning 40% fault to Plaquemines Parish Comprehensive Care Center.
LIABILITY
In its first assignment of error, the Plaquemine Parish Government argues that the trial court erred in finding a causal link between any action or inaction of Plaquemines Parish Government and the ruination of the specimen for the purposes of testing for rabies. Plaquemine Parish Government argues that the evidence at trial establishes that, more probable than not, by the time Plaquemine Parish Government was notified of the death of the dog, any attempt at testing the dog for rabies would have been futile due to the length of time that transpired between when the dog died, and when the parish was notified. We find this assignment of error unpersuasive and without merit.
The trial court, in its reasons for judgment, premised the Parish of Plaquemines’ liability on a Plaquemines Parish Ordinance No. 86, Section 15, which provides, in part:
|,;It shall also be the duty of the Plaque-mines Parish Health Department or its agents to impound or cause to be impounded any dog or other animal that has bitten a human being within the boundary limits of the Parish of Plaque-mines, or which has been bitten by any animal having rabies or any infection associated therewith, for a period of at least ten (10) days for observation, and if such animal so impounded shows indication of rabies, it shall be the duty of the Plaquemines Parish Health Department to destroy such animal.
After a finding that the Plaquemine Parish Government was not immune from liability, which we agree with, the trial court discussed in its reasons for judgment what duty the Plaquemine Parish Government had to the public and whether the Parish in fact breached that duty. Specifically, the trial court stated in its reasons for judgment as follows:
Exactly what that duty to the public, and this Plaintiff, is an issue which must be resolved. Specifically, the ordinance requires the parish to impound an animal that bites a person for observation and to destroy the animal if it is rabid. In this matter, the parish was not aware of this dog bite and was notified of the situation only after the animal had died. Thus, the question is presented as to whether the parish had a duty to collect the dead animal and submit it to testing.
The evidence in this matter is that such a procedure had become part of the process required by the cited ordinance. The parish had contracted with Jefferson Parish to have dead animals tested for rabies and, in fact, when this animal was finally collected, its head was sub *761 mitted to that same facility. In fact, when notified of the death of the dog and the fact that it had bitten Mrs. Galmiche, Savastano did not hesitate in the assumption that the dog would be collected and tested, rather, the only question was when.
Thus, the Court finds a duty on the part of the parish required by the ordinance and the practices of the parish in dealing with dog bites. The next inquiry is whether this duty was breached, to which an affirmative conclusion is reached.
There is no question that the animal was submitted to the lab by the parish employee too late for testing. The tissue had decomposed and obviously the animal had been dead too long before its head was severed and brought to the lab. The explanations for the director of the parish department responsible for this procedure are unpersuasive. The evidence establishes that the parish was short-handed with only one animal control officer on the payroll and he lived on the east bank of the parish. When Sa-vastano received the call about the dog he |7believed it to be too late for the employee to cross the Mississippi River by ferry or to drive “around” through New Orleans to the west bank of the parish. He decided that the employee should retrieve the animal the next morning and that the Galmiche’s should preserve the dog by putting it on ice until then.
While the parish argues that this was all that could be done and sufficient to satisfy their duty under the circumstances, I don’t agree. Time is critical is such a situation and the parish failed to ensure that the necessary procedures were followed timely. Both by failing to ensure adequate personnel to effectuate the purposes of the ordinance and by failing to enforce its provisions in this instance with the employee they had available the parish breached its duty to the Plaintiff.
Based upon the facts of this case as contained in the record, we find no error in the trial court’s conclusion that the Plaque-mine Parish Government breached its duty to collect the dead animal and submit it to testing immediately upon receiving notice by the Sheriffs department.
APPORTIONMENT OF FAULT
In its second and third assignments of error, the Plaquemine Parish Government argues that the trial court committed manifest error and an abuse of discretion in attributing fault. Specifically, the Plaquemine Parish Government alleges that the trial court committed error in allocating: (1) 20% of the fault to Mr. and Mrs. Galmiche; (2) 40% fault to the Plaquemines Parish Comprehensive Care Center; (3) and 10% of the fault each to Arthur Muncié, the owner of the dog, and Mitchell Buras, the owner of the premises.
In their answer to appeal, Mr. and Mrs. Galmiche also argue that the trial court committed manifest error in assigning: (1) 20% fault to Mrs. Galmiche, and (2) 40% fault to Plaquemines Parish Comprehensive Care Center.
Like all factual findings, the standard of review of comparative fault allocations is that of manifest error. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). The court in Watson listed a number of factors to be considered in determining the portion of fault attributable to the parties, including the level of the risk; whether the behavior was inadvertent or done with awareness of the danger; the significance of what was sought; the capacities of the parties; and any other extenuating circumstances. Watson, 469 So.2d at 974.
*762 The trial court considered the Watson factors when it allocated the fault among the tortfeasors. Specifically, in its reasons for judgment, the trial court stated as follows:
In this matter the dog owner is strictly liable for the actions of his pet. However, the animal was tethered and lacking any evidence that it had ever bitten before, the excitement of the turmoil associated with the hurricane evacuation probably led to its actions. In the overall scenario presented by the evidence, his liability is apportioned at 10%.
As regards the relative liability of the hospital and the parish, clearly the hospital’s duty could have been fulfilled by a phone call. In view of the possible harm and the ease by which that duty could have been met, the parish’s failure palls in comparison. On the other hand, the parish assumed a duty which was breached, and which could have rectified the breach of duty owed by the hospital staff. Therefore, the hospital’s liability is determined to be 40% of the total, with the parish apportioned 20% of the blame for the Plaintiffs injuries.
While the Plaintiff indicates that she assumed the appropriate authorities would fulfill their duty to her and impound and observe the dog for rabies, she offered equivocal evidence as to whether that assumption was reasonable. She took no actions for her own protection until after the dog’s demise. Thus, she is assigned 20% of the fault for bringing about her own injuries.
We have considered the Watson factors in light of the particular facts of this case and conclude that while we may have allocated fault differently, we cannot say that the trial court committed manifest error in making its allocation.
DAMAGES
|aIn its fourth assignment of error, The Plaquemines Parish Government alleges that the trial court committed manifest error in finding that the total damages incurred by Mrs. Galmiche, prior to the adjustment for comparative fault of the various parties, was $500,000.00, and for the plaintiff, Mr. Galmiche, prior to adjustment for the comparative fault of the various parties, was $50,000.00.
An award for damages must be reviewed in a light most favorable to the party who prevailed at trial. Harvey v. State, Dept. of Trans. and Development, 2000-1877, p. 10 (La.App. 4 Cir. 9/26/01), 799 So.2d 569, 576. An appellate court may not overturn an award for damages unless it is so out of proportion to the injury complained of that it shocks the conscience. Harvey, 2000-1877 at p. 11, 799 So.2d at 577. The trier of fact is accorded vast discretion in fixing general damage awards, such that an appellate court should rarely disturb an award of general damages. Duncan v. Kansas City Southern Railway Co., 2000-0066, p. 13 (La.10/30/00), 773 So.2d 670, 682.
The appellate court’s role in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Id. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Duncan, 2000-0066 at pp. 13-14, 773 So.2d at 682-83. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point that is reasonably within that discretion. Duncan, 2000-0066 at p. 14, 773 So.2d at 683. Applying these *763 principles to the record, we find no abuse of discretion by the trial court and no basis on which to disturb Mr. and Mrs. Gal-miche’s award of damages. |10The trial court made a fáetual finding that Mrs. Galmiche suffered severe and disabling physical and psychological injuries, and this finding is supported by the record. Although there was conflicting testimony concerning the extent of Mrs. Galmiche’s injuries, the trial court was in the best position to assess the credibility of the witnesses, and we will not disturb this credibility determination absent a showing of abuse of discretion. Accordingly, we find that the damage awards for Mr. and Mrs. Galmiche’s injuries are within the vast discretion afforded the trial court and will not be disturbed.
CONCLUSION
Accordingly, for the reasons assigned herein, the judgment of the trial court in favor of plaintiffs, Mr. and Mrs. Galmiche, and against The Plaquemines Parish Government is hereby affirmed.
AFFIRMED.

. It is an undisputed fact that neither plaintiffs, nor the defendants Mr. and Mrs. Muncie, Mr. Buras, nor the Plaquemines Parish Comprehensive Care Center, nor any of its employees, reported Mrs. Galmiche's dog bite to the Sheriff's Office or Plaquemines Parish Government’s Animal Control Department on September 1, 1998.

. The trial court did not discuss the percentage of fault of the settling defendant, Mitchell Buras and his insurer; however, it is' presumed that the trial court intended to attribute the remaining 10% to Mr. Buras.